## IN RE EPHRAIM F. CLAFLIN'S WILL.

### October Term, 1900.

Present: TAFT, C. J., TYLER, MUNSON, WATSON and STAFFORD, JJ.

#### Opinion filed March 28, 1901.

*Wills—Circumstantial evidence of due execution*—Circumstantial evidence of the due execution of a will may be such as to supplement or control the direct evidence of attesting witnesses.

*Wills—Attestation clause as evidence under certain circumstances*—When from lapse of time the attesting witnesses to a will are unable to recollect all the facts essential to a good execution, if their signatures and that of the testator are proved, an attestation clause, showing compliance with all the formalities required by law, is *prima facie* evidence of the due execution of the will.

*Wills—Attestation clause drawn by the testator and execution superintended by him*—That a testator drew his own will with a perfect attestation clause and superintended its execution, tends to show that he knew and complied with the requirements of the law.

*Wills—Will and attestation clause drawn and execution superintended by testator of experience in such matters and with knowledge of the formalities required*—Proof that before the execution of his own will in question a testator was accustomed to draw wills and superintend their execution for other people, and that he drew the will in question with a perfect attestation clause and superintended its execution with full knowledge of the requisites to due execution, raises a strong presumption that the requirements of the law in that regard were complied with.

*Wills—The testator need not actually sign in the presence of the attesting witnesses*—A testator's acknowledgment, in the presence of witnesses, of his signature previously affixed, is equivalent to a signing in their presence. The acknowledgment need not be in express words.

*Wills—Formal publication not necessary*—Any communication by a testator to witnesses, by words, signs, motions, or conduct, of the idea that he intends to give a paper effect as his will is sufficient in law to constitute a publication. In this case superintending the execution of a signed holographic will was sufficient.

*Wills—That the witnesses signed animo attestandi may be shown other-wise than by them*—That the attesting witnesses to a will knew at the time they signed that they were witnessing the testator's will, need not be shown by their testimony. That fact, though neces-sary to be proved, may be otherwise shown, as by circumstantial evidence.

*Wills—Signing by witnesses in the presence of each other*—If at the execution of a will the attesting witnesses were so situated that they could see one another sign, it is immaterial whether in fact they did or did not.

APPEAL from the allowance and probate of an instrument as the will of Ephraim F. Claflin. J. H. Bass and Orra Bass were proponents. Elmer F. Claflin and Bertha L. Blanchard were contestants. Trial by jury, Orange County, June Term, 1900, *Start*, J., presiding. At the close of the proponent's evidence a verdict was, on motion, directed for the contestants. The proponents excepted.

*J. D. Denison* for the proponents.

*M. M. Wilson* and *Darling & Darling* for the contestants.

WATSON, J. The probating of the will of Ephraim F. Claflin was contested on the ground that it was not properly executed. The instrument sought to be established as such will, was received in evidence, and it was conceded to be in the handwriting of the testator, except the signatures of the witnesses thereto, and the words "Ephraim F. Claflin's Will" on the outside. It purports on its face to have been duly executed. The attestation clause reads, "Signed, sealed, published and declared by the said Ephraim F. Claflin as his last will and testament in the presence of us who have hereunto subscribed our names as witnesses thereof, at the request and in the presence of the said testator and in the presence of each other;" and it was signed by E. I. Claflin, E. O. Mann, and Josie E. Rand as witnesses. The evidence tended to show that the testator had charge of and superintended its execution, and that he was of

sound mind; that he signed the instrument, and that it was signed by all the witnesses in the store of the witness E. I. Claflin at the testator's request and in his presence. Mann testified that the testator invited him and Mrs. Rand to witness his signature but did not tell them what the document was, whereupon they signèd it in the presence of the testator and in the presence of each other; that the signature of E. I. Claflin was just above where they signed, at the time, but that he, Claflin, was not present and did not see them sign, nor were they present when he signed, nor did they see him sign; that E. I. Claflin was about his store there somewhere, but the witness did not know where; that witness had seen him there that day running the store. Referring to the same time and place, the witness also testified: "Q. And you cannot say that Mr. E. I. Claflin was not there? A. If he was, he was hid; he was not in my sight. Q. You can't tell but what you were in his sight can you? A. I might have been in his sight, but if I was I did not see him." Evidence was introduced tending to show declarations of Mann, out of court, to the effect that all of the attesting witnesses were present together and saw one another sign, and that the witness Claflin signed and then went to putting up goods in the store. Evidence was also introduced, of more or less force, tending to show that at the time Mann signed as a witness he knew he was witnessing the testator's will. Mrs. Rand testified that she recognized her signature but remembered nothing about the matter. E. I. Claflin testified that when he signed as a witness the testator asked him to sign that "document," but did not state what it was; that he supposed at the time from what there happened that he was witnessing the testator's will; that he did not know whether the other witnesses were then present or not, but he did not see them sign. The evidence tended to show that at the time of the execution of this instrument, the testator had been accus-

tomed to draw wills, and to superintend their execution for other people, and knew the formalities required by law.

At the close of the proponents' evidence a verdict was ordered for the contestants, to which proponents excepted. The evidence, as stated herein, is given in its most favorable light for the proponents. Was it error to order a verdict, is the question.

It was not necessary for the testator to place his name on the paper in the presence of the attesting witnesses. If the will was signed by him without their presence, and he afterwards requested them to witness his signature, it was a sufficient acknowledgment of his signature, and a compliance with the law in this regard: *Adams* v. *Field,* 21 Vt. 256; *Baskin* v. *Baskin,* 36 N. Y. 416. No form of words is necessary to indicate to witnesses that the testator intends to give effect to a paper as his will. Any communication of this idea by word, sign, motions, or conduct, is sufficient in law to constitute a publication, and herein every case must depend upon its own peculiar circumstances: *Peck* v. *Cary* 27 N.Y. 9, 84 Am. Dec. 220; *Ludlow* v. *Ludlow,* 9 Stew. Eq. 597; *Haynes* v. *Haynes,* 23 Ohio St. 598.

In the case at bar, the writing and signing of the will, and the superintending of its execution, constituted a sufficient publication thereof by the testator; and in attesting the will the witnesses attested its publication: *Dean* v. *Heirs of Dean,* 27 Vt. 746. In *Ilott* v. *Genge,* 3 Curteis 181, Sir Herbert Jenner Fust said, "This is a determination that where a testator had written a will himself, and signed it, and produced that will, so signed (for this is a point never to be lost sight of) to witnesses, and desires them to sign their name, that amounts to an acknowledgment that the paper signed by them is his will, and the instrument is complete for its purpose; it is acknowledged by the testator to be his will." Nor was it necessary to show

by the attesting witnesses that at the time they signed, they knew they were witnessing the testator's will.    This fact, though necessary,—*Roberts Admr.* v. *Welch,*46 Vt. 164,—may be shown by other witnesses, or it may be inferred from the circumstances.    Six years elapsed between the time of the execution of the will in question and the trial in the court below. One of the attesting witnesses recognized her signature but could recollect nothing about the matter.    The testimony of the other attesting witnesses fell short of showing a duly executed will.    Their evidence shows a defective memory as to the whereabouts of the witness Claflin when the other witneses signed, and they deny the presence of the other witnesses when he signed.    Impeaching evidence was introduced affecting the weight of their testimony.    That they all signed at the testator's request in Claflin's store and that Claflin was about there somewhere looking after his business, is apparent from the evidence.    If all of the witnesses were so situated that they might have seen one another sign, it is not material whether they did in fact or not: *Blanchard* v. *Blanchard, 32* Vt. 62.    As the case stood, the circumstances attending the signing by the witnesses were of much force, and might be controlling; for "if all the subscribing witnesses testify that the will was not duly executed, the parties will be allowed to go into circumstantial evidence to prove its due execution:" *Dean* v. *Heirs of Dean, supra.*    Nor was this all.    When the attesting witnesses are dead, beyond the reach of process, or from lapse of time are unable to recollect all the facts essential to a good execution, if their signatures and that of the testator are proved, an attestation clause showing a compliance with all the formalities required by law, is *prima facie* evidence of the due execution of the will: *Chaffee* v. *Baptist Missionary Conv.,* 10 Paige's Ch. 85, 40 Am. Dec. 225; *Will of O'Hagan,* 73 Wis. 78, 9 Am. St. Rep. 763; *Allaire* v. *Allaire,* 37 N. J. L. 312; *Farley* v.

*Farley,* 50 N. J. Eq. 434; *Barnes* v. *Barnes,* 66 Me. 286; 1 Redfield on Wills, 238. The evidence tends to show that the testator was accustomed to draw wills and to superintend their execution for other people before the execution of the will in question; and that he drafted his own will here sought to be established, with a perfect attestation clause thereto, and superintended its execution, with full knowledge of the requirements of law for the due execution of such an instrument. This, of itself, raises a strong presumption that the known requirements were complied with: 1 Redfield on Wills, 240; *In re Lapaugh's Will,* 23 N. J. Eq. 507.

With the proponents' case standing thus, it could not be taken from the jury, and to order a verdict was error.

*Judgment reversed and cause remanded.*