IN RE EPHRAIM F. CLAFLIN'S WILL.

May Term, 1902.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON and
HASELTON, JJ.

Opinion filed August 28, 1902.

*Wills—Execution—Nullification  of  exception—Evidence—
Relevancy.*

An exception to the exclusion of testimony when first offered is nullified when, after cross-examination on that point, full re-examination thereon is allowed.

Upon the issue as to the legal execution of a will, the testimony of a
person that he, with two others, witnessed a former will of the
testator, that the testator then asked them to come in and sign,
which they did, and were all present when they signed, and of a
judge of probate that before the will in question was made, many
wills drawn by the testator had been admitted to probate in his
court, is too slightly relevant to make its exclusion error.

Upon such issue, evidence that, prior to the execution of the will in
question, the testator drew and superintended the execution of a
will, and directed the witnesses to see each other sign and to look
and see the testator sign, but did not say in words that this was
necessary, is admissible.

Former statements and testimony of attesting witnesses to a will, in
conflict with their present testimony, can be used only for the
purpose of impeachment.

It is not necessary, under our statute, that the witnesses to a will
should know the character of the instrument which they are attesting.

It is sufficient if the witnesses to a will are together in the presence
   of one another in such a way that they could see one another
   sign, whether they actually looked and saw or not.

APPEAL from a decree of the Probate Court establishing
an instrument as the will of Ephraim F. Claflin.   J. H. Bass
and Orra Bass, proponents.   Elmer E. Claflin and Bertha L.
Blanchard, contestants.   Trial by jury at the June Term, 1901,
Orange County, *Stafford,* J., presiding.   Verdict for the con-
testants.   The proponents excepted.

   *J. D. Dennison* and *R. M. Harvey* for the proponents.

   To show knowledge, learning, skill or capacity in the per-
son who made and superintended the execution of this will, is
certainly legitimate.   *Winchelsea* v. *Wanchope,* 3 Russ. 441;
*Roberts* v. *Welch,* 46 Vt. 164.

   The proponents offered to show what was said and done
by and under the direction of the testator at the time of the ex-
ecution of various wills which he had, before the date of the
will in question, drawn.   For the purpose of making it more
certain that the decedent knew the legal requirements at the
time he made and superintended the execution of the will in
question, the evidence should have been received.

   No formal publication of a will is necessary.   The testa-
tor's act of writing the will and the attestation clause, coupled
with the fact that he was of sound mind, is a sufficient publica-
tion.   It is not even necessary that the witnesses should know,
at the time they sign, that the document is a will.   Redfield on
Wills, 213-222; *Trustees* v. *Calhoun,* 25 N. Y. 422; *Mundy* v.
*Mundy,* 15 N. J. Eq. 290; *Haynes* v. *Haynes,* 33 Ohio St. 598;
1 Williams on Exrs. 144-147; *Dean* v. *Dean,* 27 Vt. 746; *Os-
born* v. *Cook,* 11 Cush. 532.

   The statement of the attesting witnesses, made out of
court, should have been received as evidence of their knowledge

of the character of this instrument. *Beadles* v. *Alexander,* 2 Am. Pro. R. 173; *Boone* v. *Lewis,* 103 N. C. 40; *Cheatham* v. *Hatcher,* 30 Gratt. 56; *Colvin* v. *Warford,* 20 Md. 357.

The charge in regard to the witnesses being in the same room is, to say the least, incomplete. *Blanchard* v. *Blanchard,* 32 Vt. 62; *Mandeville* v. *Parker,* 17· C. L. J. 442.

*M. M. Wilson* and *Darling & Darling* for the contestants.

The offer of the proponents to show the testator's conduct on the execution of certain wills was properly rejected. The only fact such evidence could directly prove, was the proper execution of those other wills. To enter upon the trial of such immaterial issues would divert the minds of the jury from the real issue involved, prolong the trial indefinitely, and defeat rather than promote justice. *Foster's Exrs.* v. *Dickinson,* 64 Vt. 248; *Weeks* v. *Lyndon,* 54 Vt. 638; *Bateman* v. *Rutland,* 70 Vt. 500.

The evidence offered concerned and brought into the case transactions similar to, but unconnected with the transaction on trial, and therefore such evidence comes under the ban of the rule announced in Article 10 of Stephen's Digest of Evidence.

Again the evidence offered was inadmissible because it was an attempt to base a presumption on a presumption. *Hammond's Admr.* v. *Smith,* 17 Vt. 263; *Richmond* v. *Aiken,* 25 Vt. 326.

The witnesses must know the character of the instrument which they are attesting. *In Re Claflin's Will,* 73 Vt. 133; *Roberts* v. *Welch,* 46 Vt. 164; 1 Redfield on Wills, 220, 224, 238, and notes.

The instruction regarding the use of former inconsistent statements made by the witnesses to the will was correct. *Thornton's Exrs.* v. *Thornton,* 39 Vt. 122.

Rowell, C. J. The proponents showed by various witnesses, each testifying to one or more instances, that before the time in question, the testator drew quite a number of wills for other people, and superintended their execution. They offered to show that in several of these instances the wills were legally executed, by showing in detail what was said and done by the testator and under his direction at the time they were executed, for the purpose of making it more certain that he knew what was necessary to a legal execution. The offer was excluded, to which the proponents excepted. On cross-examination of these witnesses, the contestants were permitted to and did inquire how the wills were executed, whereupon re-examination on that point was allowed in full. This nullified the exception, for the re-examination was seasonable to enable the proponents to avail themselves of the excluded testimony as effectually as they could have done on examination in chief.

For the same purpose the proponents further offered to show by a man, that he witnessed a former will of the testator's with two others; that the testator asked them to come in and sign, which they did, and were all present when they signed; also to show by the judge of probate that before the will in question was made, many wills drawn by the testator had been admitted to probate in his court.

Though evidence be relevant, it is not necessarily legal error to exclude it, for if otherwise admissible, it should be more than slightly relevant, it should be substantially relevant; it should afford a basis for more than mere conjecture, but for real belief; it should be more than remotely relevant, but proximately relevant. The testimony offered was too slight and conjectural to make its exclusion error.

But what was offered to be shown by the witness McIntyre was much more relevant. It was, that before the time in question, the testator drew and superintended the execution

of a will, and "directed the witnesses to see each other sign, and to look and see the testator sign," but did not say in words that that was necessary.    But he need not have said that in order to make the testimony admissible, for the maxim is, not what is said, but what is done, is regarded.    The fact that he directed the witnesses to see one another sign would have tended to show that he understood they must sign in the presence of one another, and would have supplemented the like tendency of the attestation clause, which he drew.

It was especially important in the circumstances, and undoubtedly admissible, to show that the testator knew what was necessary to the due execution of a will, for that knowledge would have afforded reasonable ground for an inference that he would be likely to see to it that the requirements were observed, especially in his own case.    *In Re Claflin's Will*, 73 Vt. 129, 50 Atl. 815, and authorities cited; *Winchilsea* v. *Wanchope*, 3 Russell 444.

It is argued by the contestants that this is basing a presumption upon a presumption, which is not allowable.    But the testimony offered tended to show, not a presumption of knowledge, but the fact of knowledge, and that fact would have afforded ground for the inference stated.    This testimony should have been admitted.

Former statements and testimony of the attesting witnesses, in conflict with their present testimony, could be used by the proponents only for the purpose of impeachment, not for the purpose of showing the same to be true.    *Thornton* v. *Thornton*, 39 Vt. 122, 152.

A more important question arises on the charge where it says that the attesting witnesses must have been informed and have known that it was Claflin's will that they were then and there asked to witness and attest; that if he concealed from them the fact that it was his will, they did not attest his will;

that it was necessary when they signed the will as witnesses that they should know they were signing as witnesses to his will; that they must have been informed of that in some way, and have understood it when they signed.

It appears that the will, including the attestation clause, was written and signed by the testator; that he superintended its execution, and that the attesting witnesses subscribed it at his request and in his presence, but whether in the presence of one another was the important question.

Under statutes like ours, which provide that wills must be "attested and subscribed by three or more credible witnesses in the presence of the testator and of each other," it is very generally held in this country that the witnesses need not know that the instrument they are attesting is a will, because such statutes are construed not to require it; and it is a question of construction, and nothing more.

The English Statute of Frauds, 29 Car. ii, c. 2, s. 5, before its modification by i Vict. c. 26, s. 9, required wills of lands and tenements to be "attested and subscribed" in the presence of the testator by three or four credible witnesses; and it was always held in England under that statute that the witnesses need not know that the instrument was a will.

In *Wright* v. *The Trustees of the British Museum*, 6 Bing. 310, only one of the witnesses knew the nature of the instrument; and it was argued that if such a subscription of their names satisfied the statute, the word "attested" would have no force whatever, and might as well have been omitted. But the court said the question was whether there was an acknowledgment in fact by the testator to the subscribing witnesses, though there was none in words, that the instrument was his will, for if, it said, by what the testator did he must, in common understanding and reasonable construction, be taken to have acknowledged the instrument to be his will, the attestation thereof

must be considered as complete, within the principle and authority of *Ellis* v. *Smith*, 1 Ves. Jun. 11, decided in 1754. And it appearing that the testator knew the instrument to be his will, as it was written and signed by him; that he produced it to the three persons, and asked them to sign it, intending they should sign it as witnesses; that they subscribed their names thereto in his presence, and returned the same identical paper to him,— it was held that he acknowledged in fact to the witnesses, though not in words, that the instrument was his will, and that its execution was good under the statute; for, the court said, whatever might have been the doubt as to the true construction of the statute, the law was then fully settled that the testator need not sign his name in the presence of the witnesses, but that a bare acknowledgment of his handwriting is a sufficient signature to make their attestation and subscription good within the statute, though such acknowledgment conveys no intimation whatever, nor means of knowledge, either of the nature of the instrument or the testator's object in signing it, and that the facts of that case placed the testator and the witnesses in the same relation as though an oral acknowledgment of his signature had been made.

The same thing is held in *Wright* v. *Wright*, 7 Bing. 457. In *Trimmer* v. *Jackson*, 4 Burn's Eccl. Law, 3d ed. 102, a will was established where the testator purposely misled the witnesses into supposing that it was a deed.

In Massachusetts they hold as they do in England, under a statute like ours in this respect. Thus, in *Osborn* v. *Cook*, 11 Cush. 532, 59 Am. Dec. 155, the testator signed the instrument in the presence of two of the witnesses, and pointed out his signature to the third witness, and each of the witnesses signed the instrument as a witness in the presence of the testator and at his request; but the testator did not disclose to any of the witnesses that it was his will, nor did any of them know

or suspect the nature of the instrument, and yet it was held well executed. The court said that calling on the witnesses to attest his execution of an instrument the character and contents of which he well knew, was in effect a declaration that the instrument he had signed, and his signature to which he desired them to attest, was his act, though the character of the instrument was not disclosed to them; that it was as if the testator had said, "This instrument is my act, it expresses my wish and purpose, and though I do not tell you what it is, I desire you to attest that it is my act, and that I have executed and recognized it as such in your presence;" that the legislature had prescribed certain solemnities to be observed in the execution of a will, that it may be seen that it is the free, conscious, intelligent act of the maker, but that it had not prescribed that he should publish to the world nor to the witnesses what is in the will, nor even that it is a will.

Connecticut holds the same way, where the statute requires a will to be in writing, subscribed by the testator and attested by three witnesses, all of them subscribing in his presence and in the presence of each other. *Canada's Appeal,* 47 Conn. 450. It is there said that the primary reason for requiring the presence of the witness is, that he should be able to say that the testator put his name upon the identical piece of paper upon which he put his own; that the witness identifies the paper by the conjunction of the two signatures, not by the character of its contents. *Allen* v. *Griffin,* 69 Wis. 529, 35 N. W. 21, is to the same effect.

*In the Matter of the Will of Rachel Hulse,* 52 Iowa, 662, 3 N. W. 734, the same is held. There the statute requires a will to be witnessed by two competent witnesses. The court said that to witness means "to see the execution of an instrument, and to subscribe it for the purpose of establishing its authenticity," and referred to the English Statute of Frauds as

containing a similar provision, and said it had been construed as not requiring publication in the sense of acquainting the witnesses with the nature of the instrument.

In *Watson* v. *Pipes,* 32 Miss. 451, the same is held under a statute taken from 29 Car. 11. The court said that such seemed to be the holding in all the States in which the provisions of the English statute in regard to wills have been adopted; that the rule is based upon the plain and obvious construction of the statute, which it did not hesitate to adopt.

The Alabama code requires wills to be "attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator." The predecessor of this statute was borrowed from 29 Car. 11, c. 3, s. 5. In *Barnwall* v. *Murrell,* 108 Ala. 366, 18 South. 831, the court said that as the statute did not require the testator to inform the attesting witnesses that the instrument was his will, it was immaterial to the due execution of the will in that case whether the testatrix made any declaration to the attesting witnesses, or gave them any notice or information, that the instrument was her will.

In Schouler on Wills, 3d ed. § 326, it is said to be the long-established doctrine, both of England and the United States, that independently of an express statute requiring publication, a will may be duly executed without any formal announcement by the testator of a testamentary purpose, and without anything being said by him to show the nature of the instrument the witnesses are called upon to subscribe; that the maker's signature *animo testandi,* and his proper acknowledgment, showing that he has put his name *bona fide* upon the paper that he desires witnessed, when he has not signed in their presence, renders the execution valid in general without any other or more formal execution; and that the signature of the witnesses being duly affixed, the act of execution becomes complete.

In Missouri, under a statute that is almost an exact transcript of 29 Car. II, c. 2, s. 5, they hold that there must be some declaration by the testator that the paper is his will, but that it need not be verbal, than an act or a sign is enough; but that the witnesses must know it is the will of the testator, and witness it at his request. *Odenevaelder* v. *Schorr,* 8 Mo. App. 458. In support of this construction of the statute, *Mundy* v. *Mundy,* 15 N. J. Eq. 290, is referred to. But that case was decided under a statute that expressly required that the instrument should be "declared to be" the last will and testament of the testator, so no authority for the holding.

The contestants rely much upon *Swift* v. *Wiley,* 1 B. Mon. 114, where it is said that to attest the publication of a paper as a will, and to subscribe thereto the names of the witnesses, are very different things, and required for different ends; that attestation is an act of the mind; subscription, an act of the hand; that to attest a will is, to know that it is published as such, but to subscribe it, is only to write on the paper the names of the witnesses for the sole purpose of identification. But this case is of little worth, for *Flood* v. *Pragoff,* 79 Ky. 607, expressly decides that it is not necessary that the witnesses should know the nature of the instrument, and says that the question never before arose in that State; and it hardly could have arisen in *Swift* v. *Wiley,* for there was a publication there by the testator, at which the witnesses were present. It is said in *Flood* v. *Pragoff,* that the legislature had prescribed such formalities for the execution of wills as it thought proper, and that the court ought not to add to them by construction, especially when the efficacy of the constructive requirement depended solely upon the memory of the subscribing witnesses.

Illinois and Wisconsin repudiate the idea that there is any difference between attesting and subscribing a will. *Drury* v. *Connell,* 177 Ill. 43, 52 N. E. 368; *Sloan* v. *Sloan,* 184 Ill. 579,

56 N. E. 952; *Skinner* v. *American Bible Society*, 92 Wis. 209, 65 N. W. 1037.

Dr. Lushington said in *Bryan* v. *White*, 2 Robertson, 315, that he felt no difficulty in answering the question, What is the meaning of "shall attest"? That attest means that the person shall be present and see what passes, and shall, when required, bear witness to the facts. Lord Chancellor Selborne said in *Seal* v. *Claridge*, 50 L. J. Rep. (1881), 316, that "surely the very words, *ad testari*, imply the presence of a witness standing by who is not a party to the deed to be witnessed." Other English cases say that to attest an instrument is not merely to subscribe one's name to it as having been present at its execution, but includes also, essentially, the presence in fact at its execution of some disinterested person capable of giving evidence of what took place. *Roberts* v. *Phillips*, (1855), 4 El. & Bl. 450; *Ford* v. *Kettle*, (1882), 9 Q. B. D. 139. Dr. Lushington somewhere illustrates, that as a notary, by his attestation of protest, bears witness, not to the statements in the protest, but to the fact of making those statements, so the witnesses to a will bear witness to all the statute requires attesting witnesses to attest, namely, that the signature was made or acknowledged in their presence.

Judge Redfield, both in his work and his cases on wills, strenuously contends that the witnesses must know the nature of the instrument. Otherwise, he asks, what becomes of all that is said about the great solemnity the law attaches to the formal execution of wills? and how are the witnesses charged with the duty of seeing that the testator is of sound mind before they consent to attest the instrument, which, it is sometimes said, commits them to having attested that fact as well as the formal signature of the testator?

As to the "solemnity," the formal execution of wills being mere matter of statutory requirement, whatever has been said

about it dehors the statute goes for nothing. As to the wit-
nesses being charged with the duty of seeing that the testator
is of sound mind, the statute does not thus charge them, unless
by the word "attested;" and if that word charges that duty, it
must, it would seem, charge the further duty of seeing that he
is of full age, for that is as essential under our statute as a
sound mind. But the word "attested" does not charge the
duty claimed, as is shown by *Thornton* v. *Thornton,* above
cited. There it was contended that the weight to be given to
the testimony of an attesting witness to a will is matter of law,
and that therefore the trial court was bound to charge, as re-
quested, that such testimony is "entitled to much consideration
on the question of capacity." But this court said that the law
gives no weight to the testimony of such a witness beyond what
it would be entitled to under the conditions that usually govern
the value of testimony; that the prominence given to such tes-
timony in opinions where both law and fact are discussed, arises
from the witness' acknowledged opportunity for observation
at the precise time in question, and from the probability of his
having used the opportunity on account of his participation in
the transaction; that it is because of his opportunity, not be-
cause he wrote his name on the instrument, that his testimony
is usually listened to with attention; but that the law attaches
no fictitious official weight to the testimony, so as to pass it for
more than it is worth; but that its value is to be determined by
the rules applicable to other testimony.

In *Dean* v. *Dean,* 27 Vt. 746, it is said that attesting a will
by the witnesses is an attestation of its publication; that a for-
mal publication is not necessary; that writing and signing a will
is sufficient publication; indeed that any act of the testator's by
which he designates that he means to give effect to the paper
as his will, is a publication of the will itself. Nothing in this,
except the words, "as his will," indicates that the publication

must be such as to inform the witnesses of the testamentary character of the instrument.    And these evidently do not mean that, for it had just been said that writing and signing the will was a sufficient publication, and that suggests no such idea. They mean no more than is said in *Roberts* v. *Welch,* below cited, that a declaration by the testator to the witnesses that it is his will, *or his instrument,* is enough.    Otherwise, the court was running counter to the established construction of 29 Car. 11, concerning which the court had a few years before said in *Adams* v. *Field,* 21 Vt. at p. 266, that "when our statute of wills was enacted, the statute of Car. 11 had received a long, fixed and well known construction; and when we adopt an English statute, we take it with the construction that it has received, on the ground that this was the implied intention of the legislature."

But it is proper to remark in this connection that what is said in *Dean* v. *Dean* is entirely *obiter,* as the only question was whether the testimony warranted the finding that the will was executed by the testator in the presence of the witnesses, and subscribed by them in his presence and in the presence of each other.

In *Roberts* v. *Welch,* 46 Vt. 164, one of the witnesses did not know that the testator had signed the paper at all, nor what the paper was, nor for what purpose he himself was signing it. The court said that although it was not necessary for the testator to sign in the presence of the witnesses, but that a declaration to the witnesses that it was his will, or his instrument, would be enough, yet that the witnesses must know that by affixing their names to the instrument they were attesting its execution by the testator; that a person, to become an attesting witness, must be aware of the character of the act he is called upon to perform, and must subscribe his name *animo testari.* As nothing is said about the fact that the witness did not know

the character of the instrument, it is manifest that the court did not regard it essential that he should know it, but only that he should know the character of his own act, and to that end, should know that the testator had signed the paper. This gives force to the word "attested" in the statute, and makes it more than "subscribed," makes it a mental act, but applies it in essentiality only to the execution of the instrument, not to a knowledge of its character.

But it is claimed that in this very case when it was here before—73 Vt. 129, 50 Atl. 815—we said the witnesses must know the character of the instrument. The language most relied upon in support of the claim is this: "Nor was it necessary to show by the attesting witnesses that at the time they signed they knew they were signing the testator's will. This fact, though necessary—*Roberts* v. *Welch*, 46 Vt. 164—may be shown by other witnesses, or it may be inferred from the circumstances." This language, when taken in connection with the case to which it refers and the context, does not mean, we think, what is claimed for it. The case referred to, as we have seen, does not require that the witnesses must know that the instrument is the testator's will, but only that it is his instrument, and that by affixing their names to it they are attesting its execution as such by the testator.

And when we look at the context, we see that no more was meant, for therein the court had said that writing and signing the will and superintending its execution, was a sufficient publication by the testator, and that in attesting it, the witness attested its publication; and therewith agree the cases. But here is no intimation that the witnesses must know the character of the instrument. And the quotation from *Ilott* v. *Genge*, 3 Curteis, 181, is to the same effect, for although it says that when a testator writes the will himself, and signs it, and produces it to the witnesses and desires them to sign their names, that

amounts to an acknowledgment on his part that the paper signed by them is his will, yet this is not saying that the witnesses thereby know it to be his will, but only that he himself knows it. That case arose under the statute of 1 Vict., under which it has always been held that when the signature of the testator is seen or expressly acknowledged, it is not material that the witnesses are not told that the instrument is a will.

We hold, therefore, that our statute does not require that the attesting witnesses to a will shall know the nature of the instrument.

It appeared that the witnesses were in the store of one of them when they signed; but it did not appear how large the room was, except that it was a country general store. The jury asked if it was enough that the witnesses were in the same room. The court replied that merely being in the same room was not enough, the room might have been so large; that the witnesses must have been together in the presence of one another in such a way and in such a sense that they could see one another sign, whether they actually looked and saw or not; that they must have been right there where they could see one another sign. This is in substantial accord with the *Blanchard* case, 32 Vt. 62, and so no error.

*Reversed and remanded.*