Long v. Mickler.

MRS. EMMA LONG *v.* MRS. MARGARET MICKLER.

(*Knoxville.* September Term, 1915.)

1. **WILLS. Requisites. Execution. Witnesses.**
Where the testator wrote out his will, signed it, and on his request procured the signature of one witness without disclosing that it was a will, and that of another witness after disclosing it to be his will, it is valid, under Shannon's Code, sec. 3895, providing that no will shall be good unless written in the testator's lifetime and signed by him and subscribed in his presence by two witnesses, although neither witness saw him sign or subscribed as witness in the presence of the other witness. (*Post, pp.* 53-55.)

Cases cited and approved: White v. British Museum, 6 Bing., 310; Ellis v. Smith, 1 Ves. Jr., 11; Wright v. Wright, 7 Bing., 457.

Cases cited and distinguished: Simmons v. Leonard, 91 Tenn., 183; Osborn v. Cook, 11 Cush. (Mass.), 532.

Code cited and construed: Sec. 3895 (S.).

2. **WILLS. Execution. Witnesses.**
Unless publication of the contents of a will to the subscribing witnesses is required by statute, they need not be informed of the character of the document when they subscribe. (*Post, pp.* 55, 56.)

Cases cited and approved: In re Claflin's Will, 75 Vt., 19; Scott v. Hawk, 107 Iowa, 723; Watson v. Pipes, 32 Miss., 451.

---

FROM HAMILTON

---

Appeal from the Circuit Court of Hamilton County. —NATHAN L. BACHMAN, Judge.

W. B. MILLER, for appellant.

SIZER, CHAMBLISS & CHAMBLISS, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This case presents a contest of the validity of the will of R. N. Phillips, deceased. The question submitted is whether it was necessary for the testator to have made known to the subscribing witnesses the nature of the document.

The proof showed that R. N. Phillips lived in Chattanooga at the Mountain City Club. He had been ill and confined to his room for several days, and upon his recovery executed the will in controversy here. He wrote the will himself on the stationery of the club, and signed it. After signing it he took the paper to L. W. Llewellyn, exhibited it, and asked Mr. Llewellyn to witness his signature. The paper was so held or folded by Phillips that no part of its contents could be seen or its character ascertained by Llewellyn. Llewellyn demurred to signing the instrument on the ground that he did not like to sign anything without knowing what it was. Phillips replied, "Well, you know that is my signature," and thereupon Llewellyn signed the instrument at the request and in the presence of Phillips as a witness. Phillips then took the paper to W. W. Spotts and requested Spotts to sign it, telling him that it was his (Phillips') will. Spotts thereupon signed the paper as a witness, in Phillips'

presence.  About a week later Phillips told Llewellyn, the first witness, that the paper the latter had subscribed was his (Phillips') will.

Upon the foregoing testimony being offered, the trial judge directed a verdict in favor of the will, there being no question made upon its validity except the failure of the testator to make publication of its contents to the subscribing witnesses.  The court of civil appeals affirmed the judgment below, and we think the action of the two courts was proper.

It was not necessary that either of the witnesses should have seen the testator sign the paper, nor that either should have subscribed it in the presence of the other witness.  *Simmons* v. *Leonard,* 91 Tenn., 183, 18 S. W., 280, 30 Am. St. Rep., 875, and cases cited.

The statute of Tennessee is as follows:

"No last will or testament shall be good or sufficient to convey or give an estate in lands, unless written in the testator's lifetime, and signed by him, or by some other person in his presence and by his direction, and subscribed in his presence by two witnesses at least, neither of whom is interested in the devise of said lands."  Shannon's Code, sec. 3895.

This statute is founded on the section of the statute of frauds relating to wills (29 Car. II, ch. 3), which provides that a devise of lands shall be attested and subscribed in the presence of the testator by three or four credible witnesses.

The English courts have always held, construing the statute, that the witnesses need not know the in-

strument they were attesting was a will. They said
the question was whether there was an acknowledg-
ment in fact by the testator to the subscribing wit-
nesses, though there was none in words, that the in-
strument was his will; for if, by what the testator did
he must in common understanding and reasonable con-
struction be taken to have acknowledged the instru-
ment to be his will, the attestation thereof would be
considered as complete. *White* v. *British Museum*, 6
Bing., 310; *Ellis* v. *Smith*, 1 Ves. Jr., 11; *Wright* v.
*Wright*, 7 Bing., 457.

In his work on wills, Mr. Underhill points out that
in some of the States of the American Union the Eng-
lish statute referred to has been re-enacted with the
additional requirement that the testator must declare
the instrument to be his will in the presence of the at-
testing witnesses. But he states that in those jurisdic-
tions where the English statute of frauds has been re-
enacted without the additional requirement for publi-
cation the witnesses need not know the instrument
which they attest is a will.

"For," he says, "the law requires a subscription
by witnesses only in order that the paper which is of-
fered for probate as a will may be then identified as
the same instrument which was executed by the tes-
tator in the presence of the witnesses." Underhill on
Wills, sec. 180, and section 202.

The supreme court of Massachusetts has said:

"This will was in writing, signed by the testator,
and attested and subscribed in his presence by three

competent witnesses. It was written by the testator. He knew, therefore, if of sound mind, what he signed, and what he asked the witnesses to attest. The calling upon witnesses to attest his execution of an instrument, whose character and contents he well knew, was in effect a declaration that the instrument he had signed, and his signature to which he desired them to attest, was his act, though the character and contents of the instrument were not disclosed to them. It was as if the testator had said: 'This instrument is my act; it expresses my wishes and purposes; and, though I do not tell you what it is, I desire you to attest that it is my act, and that I have executed and recognized it as such in your presence.' We think all the requirements of the statute are met and satisfied. No formal publication of the instrument, no declaration of its contents, or of its nature, is in terms required. The legislatures have prescribed certain solemnities, to be observed in the execution of a will, that it may be seen that it is the free, conscious, intelligent act of the maker; but they have not prescribed that he should publish to the world or to the witnesses, what is in the will, or even that it is a will." *Osborn* v. *Cook,* 11 Cush. (Mass.), 532, 59 Am. Dec., 155.

The law seems to be well settled that unless publication of the contents of the will to the subscribing witnesses is required by statute, it is unnecessary, and such witnesses need not be informed of the character of the document at the time they subscribe their names as witnesses. See *In re Claflin's Will,* 75 Vt., 19, 52

Atl., 1053, 58 L. R. A., 261; *Scott* v. *Hawk,* 107 Iowa, 723, 77 N. W., 467, 70 Am. St. Rep., 228; *Watson* v. *Pipes,* 32 Miss., 451.  See, also, 40 Cyc., 1116, 1117, and cases cited.

The judgment of the court of civil appeals will be affirmed.