RAGSDALE et ux. v. HILL et al.—269 S. W. (2d) 911.

Middle Section. March 26, 1954.

Rehearing denied April 29, 1954.

Petition for Certiorari denied by Supreme Court, July 23, 1954.

674

Denney, Leftwich & Glasgow, and Hume, Howard, Davis & Boult, all of Nashville, for plaintiff in error.

Courtney, Covington & Courtney, of Franklin, for defendant in error.

FELTS, J., This appeal presents a contest of the validity of a paper-writing propounded as the last will and testament of Newman H. Hill, deceased. The principal question is whether this instrument was "attested" as prescribed by the applicable law so as to entitle it to be probated as the will of the deceased.

He was a resident of Davidson County, Tennessee, unmarried, childless, and had no kin except his mother, Mrs. O'phelia Hill, and some cousins, one of whom was proponent Walter D'. Ragsdale. He and Ragsdale were about the same age and had been intimate friends since childhood; and he and his mother had spent much time in Ragsdale's home where they had both been treated with great consideration and kindness.

He was a veteran of World War I and was a patient in the Veterans' Hospital at Biloxi, Mississippi, where he executed this instrument on July 14, 1948. He called two of the hospital employees, Mrs. Ruth R. Merritt and Frank E. Baker, a notary public, to his room, and read over this paper, which had already been prepared in typewriting, declared it to be his will, and signed it in the presence of these two witnesses. But they did not subscribe their names to it, though Baker took Hill's acknowledgment and affixed his name and seal to it as a notary.

By this paper he gave all of his personal effects to his mother, if living, otherwise to proponents Walter D. Ragsdale and wife, Mattie Sue, and he gave the rest of his property in trust to the Nashville Trust Company as trustee for the use of his mother during her life, and provided that the trust should cease at her death and the balance of the fund should go to Walter D. Ragsdale and wife. He also appointed the Nashville Trust Company his executor.

He had a bank account with the Nashville Trust Company, and that concern was already acting as trustee in a small trust which he had set up for the use of his mother. After executing this paper as above stated, he sent it by mail to the Nashville Trust Company. On receiving it

the trust officer failed to note that it was notarized instead of being subscribed by two witnesses. It was kept by the company in Hill's file and is now sent up in the original.

A week or so after receiving this paper the Nashville Trust Company received notice of the death of Newman H. Hill, which death occurred about the 22nd of July, 1948. On August 13, 1948, the company's trust officer took this paper to County Judge Hickman, who stated that it could not be probated. But it was marked filed and kept in the Clerk's office. The trust officer was appointed administrator of the estate of Newman H. Hill, deceased, and proceeded with its administration.

About a year later Walter D. Ragsdale learned for the first time that Newman H. Hill had executed the paper in question, and then went to see it in the office of the County Court Clerk. On September 30, 1949, the County Judge entered an order denying probate of it because it was not witnessed by two subscribing witnesses as required by the Acts of 1941, Chapter 125, Section 4, now 1950 Tenn. Code Supp. Section 8098.4.

On February 4, 1950, Walter D. Ragsdale was permitted to withdraw this paper from the files of the County Court Clerk, and on February 7, 1950, the witnesses Frank E. Baker and Mrs. Ruth Merritt signed and swore to an attestation on a separate sheet of paper which was physically attached to the will.

This attestation stated that Frank E. Baker and Mrs. Ruth R. Merritt ''witnessed the execution of the annexed and foregoing instrument by Newman H. Hill, on the date same bears date, to wit: July 14, 1948, as and for his last will and testament, at his request, in his presence and in the presence of each other and we now sign as subscribing witnesses thereto.'' This attestation was dated February 7, 1950, and signed by these two witnesses.

At the same time also was attached an affidavit by both of them, the substance of which was as follows:

On July 14, 1948, about a week before the death of Newman H. Hill, affiants were called to his room to witness his will. He read over the paper, which he had already caused to be prepared, and stated it was his will and he wished to sign it in their presence and have his signature properly attested. He did sign it but both he and they thought it should be signed and attested before a notary public under the notary's seal, and not by the signatures of two attesting witnesses.

Affiant Baker thereupon took the acknowledgment of the testator to the will and affixed the notary seal, as it now appears on that paper; but neither of affiants signed the paper as witnesses, though both were qualified to do so. They further stated that, by the "instrument hereto attached," they signed as witnesses to said last will and testament "as of this date." It was further stated that the testator was of sound and disposing mind and memory.

On March 28, 1950, Walter D. Ragsdale and wife commenced the present proceeding by filing their petition in the County Court of Davidson County, exhibiting the paper-writing and the papers attached thereto, and prayed that said writing be admitted to probate as the last will and testament of Newman H. Hill, deceased.

Mrs. Ophelia Hill, the Nashville Trust Company as her guardian, she having been adjudged of unsound mind, and Overton Thompson, Jr., administrator of the estate of Newman H. Hill, were made defendants to the petition. They demurred to it upon the grounds that the alleged will was not executed in accordance with the law of Tennessee or the law of Mississippi, and that the former

order denying probate of it was *res judicata* and a bar to the petition.

The County Court sustained the demurrer and dismissed the petition. Petitioners appealed to the Circuit Court, that court overruled the demurrer, and defendants answered. Mrs. Ophelia Hill died and the cause was revived as to the beneficiaries named in her will. The case was tried before the Circuit Judge, without a jury, and he decreed the paper was a valid will, and remanded the cause to the County Court for further proceedings. Defendants appealed in error to this Court and have assigned errors.

Petitioners have moved to dismiss this appeal in the nature of a writ of error, upon a number of grounds.

First, it is urged that the 1950 supplement to the Code, Section 10622, provides that all cases, both actions at law and suits in equity, tried without a jury "shall be reviewed upon a simple appeal, as now provided in equity cases;" that the only mode of review in all non-jury cases is now an appeal; and that this Court has no jurisdiction of an appeal in the nature of a writ of error in such a case as this one.

The 1932 Code, Section 9059, provides that any party to a decree in equity shall have the right to take an appeal in the nature of a writ of error from such decree, upon the same terms as an appeal. That is, both modes of review were "provided in equity cases" when Section 10622 was enacted in its present form. Gibson's Suits in Chancery, 4th Ed., Sec. 1266.

It may well be doubted whether this earlier section was repealed by the later one. But it is not necessary to decide this question. The distinction between an appeal and an appeal in error is not rigorously observed, and

under our liberal practice we may properly treat this appeal in error as a simple appeal. Gibson's Suits in Chancery, 4th Ed., Sec. 1266; Webster v. Trice, 23 Tenn. App. 365, 366, 133 S. W. (2d) 621; Burns v. Duncan, 23 Tenn. App. 374, 378, 133 S. W. (2d) 1000.

■ Second, petitioners contend that this appeal in error was not perfected within 30 days after the judgment, as required by Code Section 9047. The judgment was entered February 19, 1953; defendants' motion for a new trial was filed February 24, and overruled March 23; and this appeal was granted and the appeal bond filed March 23, 1953. That is to say, the appeal was perfected 32 days after the judgment, counting the time while the motion for a new trial was pending.

Under the long established rule, however, the filing of this motion for a new trial, within 30 days after the judgment, suspended the judgment and preserved the Trial Judge's jurisdiction until he disposed of the motion; and when he overruled it he could then grant an appeal or an appeal in error and allow time for perfecting it and for filing a bill of exceptions, for these purposes the judgment being regarded as entered at the time of overruling the motion for a new trial. Code Supp. Sections 8820, 9047; Waller v. Skeleton, 31 Tenn. App. 103, 109, 212 S. W. (2d) 690; Eldridge v. Rively, 175 Tenn. 74, 76, 132 S. W. (2d) 204, and cases there cited.

But petitioners insist that this rule has been changed in non-jury cases; that Code Supplement Section 10622, above cited, provides that "no motion for a new trial shall be necessary" in such cases; that this makes such a motion unnecessary and ineffective to suspend the judgment; and that the motion in this case was ineffectual and the judgment after 30 days passed beyond the power

of the Trial Judge and became final so that no appeal could be prayed or granted therefrom.

■ We think this argument is unsound. A motion for a new trial serves two purposes, viz.: (1) to suspend the judgment so that the Trial Judge may have time to correct his errors by the grant of a new trial; and (2) to specify the error as a ground and prerequisite to an appellate review where such error depends upon a bill of exceptions. Memphis Street Railway Company v. Johnson, 114 Tenn. 632, 88 S. W. 169; Savage v. Spur Distributing Company, 33 Tenn. App. 27, 35, 228 S. W. (2d) 122, and authorities there cited.

■ We think that the only effect of this provision of Section 10622 was to make a motion for a new trial unnecessary as a prerequisite to an appellate review of questions in non-jury cases which depend on a bill of exceptions.

We are satisfied that it did not abolish motions for new trials in such cases, nor deprive trial courts of the power to grant new trials, nor change the rule that the timely filing of a motion for a new trial suspends the judgment until the Trial Judge can find an opportunity to dispose of the motion. Cf. 1950 Code Supp. Section 8980 (providing for filing petitions to rehear and motions for a new trial) and 8820 (recognizing that such a motion suspends the judgment).

■■ Third, petitioners contend that the judgment of the Circuit Court stands unappealed from; that this appeal in error was not from the judgment but from the order overruling the motion for a new trial; and that, likening this to an equity case, this appeal from the order denying a new trial or rehearing is not reviewable. Capshaw v. Town of Cookeville, 185 Tenn. 96, 203 S. W. (2d)

369; First State Bank v. Stacey, Tenn. App., 261 S. W. (2d) 245.

We think the appeal was a broad one which brought up the judgment for review. But whether it did or not is not material. Upon the oral argument defendants-appellants stated that if their appeal was invalid for any reason, they asked for a writ of error. They are clearly entitled to this remedy. Code, Sections 9063-9073; Covington v. Neilson, 14 Tenn. 475, 477; Burcham v. Carbide & Carbon Chemicals Corporation, 188 Tenn. 592, 596, 221 S. W. (2d) 888.

For these reasons we overrule petitioners' motion to dismiss, and treat the cause as properly before us by appeal or writ of error for review upon the merits of appellants' assignments of error. Covington v. Neilson, supra; State for Use and Benefit of Lawrence County v. Hobbs, 194 Tenn. 323, 329, 250 S. W. (2d) 549, 551.

█ We first consider their plea of *res judicata,* based on the former decree of the County Court. This defense was not properly presented by the demurrer, since the petition did not refer to that decree; but the matter was pleaded in the answer, and we think appellants' assignments of error are sufficient to present the question here.

As stated above, the paper in question was presented to the County Judge by the trust officer of the Nashville Trust Company on August 13, 1948. This application was informal; there was no petition or pleadings, no process, and no notice to the beneficiaries named in the will. Probate was denied, but no order was entered for more than a year. On September 30, 1949, the order relied on was entered and was in these words:

"This matter came before the Honorable Litton Hickman, County Judge of Davidson County, Ten-

nessee, upon the application to probate the Will of Newman H. Hill, dated July 14, 1948.

"Probate of said Will is by the Court denied as said Will is not executed in accordance with the provisions of the law pertaining thereto; the same being Chapter 125, Public Acts of 1941, more specifically Section 4 of said Act."

Appellants contend that the question of the probate of this paper as the will of Newman H. Hill, deceased, was determined by this decree, which was final and unappealed from, and that this determination is *res judicata* and conclusive against the right to offer the paper again for probate as the will of Newman H. Hill, deceased.

■ The general rule is that, as between the same parties, in the same capacities, and touching the same subject matter, the estoppel of a former judgment or decree is conclusive upon every issue which was within the purview of the pleadings and was the subject of controversy in the action or suit. Harris v. Mason, 120 Tenn. 668, 115 S. W. 1146, 25 L. R. A., N. S., 1011; Pile v. Pile, 134 Tenn. 370, 183 S. W. 1004; Hull v. Vaughn, 23 Tenn. App. 448, 134 S. W. (2d) 206.

■ Where a party has two distinct rights or titles, though both of which are in a sense part of the same subject matter, but only one of which is presented by the pleadings and decided by the judgment or decree, such decision is not *res judicata* of the other right or title and does not estop the party from asserting or defending the same in a subsequent suit between the same parties. Pile v. Pile, supra.

■ The party pleading *res judicata* has the burden of proving it, and to sustain such a plea it must be made to appear that the issue, fact, or right was not only in-

volved in the former suit but was litigated and determined by the former judgment or decree. Hull v. Vaughn, supra; Harris v. Mason, supra; Rutherford v. Parker, 29 Tenn. App. 179, 195 S. W. (2d) 328.

There were two distinct rights in respect of the paper here involved, viz.: (1) the right to probate it under Code Section 8098.4, Acts 1941, ch. 125, Section 4, governing wills executed in Tennessee, and (2) the right to probate it as a foreign will under Code Section 8098.7, providing that a written will executed outside this state in the manner prescribed by the law of the place of its execution shall be good in this state.

The former decree shows that it determined only one of these rights—determined that the will could not be probated under Section 8098.4, since it had not been attested *and subscribed* by two or more witnesses as required by that section. The other right—the right to probate it under the law of Mississippi, the place of its execution—which proponents asserted in their petition, was not involved or determined in the former decree.

So we think the plea of *res judicata* failed because the right and question here involved was not considered or determined in that former proceeding. Pile v. Pile, supra; Harris v. Mason, supra; Black Diamond Collieries v. Deal, 150 Tenn. 474, 265 S. W. 985; Rutherford v. Parker, supra; Allred v. Allred, 5 Tenn. App. 200; 2 Freeman on Judgments, 5th Ed., Sec. 815, p. 1734; Fransioli v. Podesta, 175 Tenn. 340, 134 S. W. (2d) 162.

While this paper was not *attested and subscribed* as required by Tennessee Code Section 8098.4, it is conceded that the paper would be good as a will under Code Section 8098.7, if it was "attested" as prescribed by the law of Mississippi, the place where it was executed.

Though other Mississippi statutes relating to the probate of wills have been referred to in the briefs, it is not denied that the controlling section prescribing the formalities for the execution of wills in Mississippi is Hemmingway's Code 1927, Sec. 3566, Didlake v. Ellis, 158 Miss. 816, 131 So. 267, now 1942 Mississippi Code Section 657, which is in these words:

"Every person aged twenty-one years, male or female, married or unmarried, being of sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estate, right, title, and interest in possession, re-version, or remainder, which he or she hath, or at the time of his or her death shall have, of, in, or to lands, tenements, hereditaments, or annuities, or rents charged upon or issued out of them, or goods and chattels, and personal estate of any description whatever, provided, such last will and testament, or codicil, be signed by the testator or testatrix, or by some other person in his or her presence, and by his or her express direction; and, moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two or more credible witnesses in the presence of the testator or testatrix."

At common law no attestation or subscription of a will was necessary to its validity. The requirements of attestation, or subscription, or both, are purely of statutory origin. 57 Am. Jur., Wills, Sec. 285.

"In the absence of a statute which requires attestation, or subscription, or both, it is not necessary that a will or a testament shall be attested or subscribed by witnesses. The original Wills Act (32 Hen. VIII, c. 1) contained no provision with reference to attestation or

subscription by witnesses." 1 Page on Wills, 3rd Ed., Sec. 306, p. 570.

The first statute making these requirements was the English Statute of Frauds, 29 Car. II, c. 3, Sec. 5, which provided that wills of realty should be "attested and subscribed in the presence of said devisor by three or four credible witnesses." Page, supra; Long v. Mickler, 133 Tenn. 51, 53, 179 S. W. 477.

The statutes of most of the American States are modeled after this English statute and provide for both attestation and subscription of the will by witnesses. See 1932 Tennessee Code, Section 8089, now superseded by Sections 8098.1-8089.7; 1 Page, 3d Ed., Sec. 306, p. 571; Rood on Wills, 2d Ed., Sec. 241.

Thus it will be observed that the Mississippi statute, which provides that the will "shall be attested by two or more credible witnesses in the presence of the testator", differs from the English statute and most of the American statutes in that they require both attestation and subscription while the Mississippi statute requires only attestation.

So it is in the light of this common law and this difference that this Mississippi statute is to be construed. It is to be regretted that we have been cited to no decision of the Mississippi Court giving an authoritative construction of this statute or dealing with the same factual situation as that here presented, though learned counsel have cited and discussed numerous decisions laying down principles which point the way to a decision of this case.

Some courts distinguish between attestation and subscription. They hold that attestation consists in witnessing the testator's execution of the will in order to see and take note mentally that those things are done which

the statute requires for the execution of a will and that the signature of the testator exists as a fact; and that subscription is the signing of the witnesses' names upon the same paper, for the purpose of identification of such paper as the will which was executed by the testator. 57 Am. Jur., Wills, Secs. 283, 297, 336; 1 Page on Wills, 3d Ed. Secs. 306, 307.

" 'The law requires a subscription by witnesses only in order that the paper which is offered for probate as a will may then be identified as the same instrument which was executed by the testator in the presence of the witnesses.' Underhill on Wills, Section 180, Section 202." Long v. Mickler, supra, 133 Tenn. 54, 179 S. W. 478.

The Supreme Court of Mississippi appears to observe this distinction. In Maxwell v. Lake, 127 Miss. 107, 116, 88 So. 326, 329, the Court quoted approvingly from a Kentucky case [Swift v. Wiley, 1 B. Mon. 114] as follows:

" 'To attest the publication of a paper as a last will, and to subscribe to that paper the names of the witnesses, are very different things, and are required for obviously distinct and different ends. Attestation is the act of the senses, subscription is the act of the hand; the one is mental, the other mechanical; and to attest a will is to know that it was published as such, and to certify the facts required to constitute an actual and legal publication; but to subscribe a paper published as a will is only to write on the same paper the names of the witnesses, for the sole purpose of identification.' "

In Tyson v. Utterback, 154 Miss. 381, 122 So. 496, 499, 63 A. L. R. 1188, the Court made these observations as to the differing objects of subscription and attestation.

The Court quoted from Heatherington v. Pipes, 32 Miss. 451, 467, as follows:

" 'The object of the statute, in requiring that the witnesses shall subscribe their names in the presence of the testators, is, that he may have ocular evidence of the identity of the instrument attested as his will, and thus * * * prevent the fraudulent substitution of another'."

With respect to the purpose of attestation the Court further said:

"These are the functions of attestation, namely, that the testator may know that the paper that is being attested is the exact paper which he signed, and that the witnesses may know that the paper which they are attesting is the exact paper which the testator signed or expressly directed to be signed for him in addition to which the attestation includes the further function that the witnesses shall be reasonably satisfied that the testator is of sound and disposing mind and memory, and capable of executing a will. (Citing a number of cases.)" 154 Miss. 392, 122 So. 499, 63 A. L. R. 1193.

 In the light of these holdings of the Mississippi Court we think all of these objects of attestation and of subscription were fully met and satisfied in the case before us.

The proof leaves no doubt that the testator read over the paper, declared it to be his will, stated that he wished to sign it and have it properly attested before the witnesses; that he did sign it in their presence as his last will; and that he was of sound and disposing mind and memory.

It appears that both the testator and the witnesses

thought that the will should be acknowledged before a notary public with the notary's seal attached rather than subscribed by the witnesses; and Baker, the notary, took the testator's acknowledgment, affixed his seal and signed his name to the will. This made Baker a proper attesting witness under the Mississippi statute. Bolton v. Bolton, 107 Miss. 84, 64 So. 967; Tyson v. Utterback. 154 Miss. 381, 122 So. 496, 63 A. L. R. 1188.

Thus it appears that this paper was properly attested under the Mississippi statute and, insofar as subscription may be a requirement of such statute, the will was subscribed so as fully to satisfy the purpose of subscription-identification, it being admitted that the paper now before us is the same as that executed by the testator and there being no question of fraud or substitution.

It appears that the statute of Mississippi like that of Virginia is to be liberally construed, the purpose being to prevent mistake, imposition, fraud, or deception but not to restrain or abridge the power of the testator to dispose of his property. French v. Beville, 191 Va. 842, 62 S. E. (2d) 883, 884; Gordon v. Parker, 139 Miss. 334, 104 So. 77, 39 A. L. R. 931, 932.

"Where the facts show an effort by the testator in good faith to execute a will, there should be no technical and hard rules of construction. " Better v. Hirsch, 115 Miss. 614, 623, 76 So. 555, 556.

So our conclusion is that this paper was properly executed and attested according to the law of Mississippi, the place of its execution, and is therefore entitled to be probated in Tennessee; and that there was no error in the judgment of the Circuit Court.

A judgment will be entered here affirming the Circuit Court judgment and remanding the case, together with

the original will now before us, to the County Court for further proceedings not inconsistent with this opinion. The costs of the appeal are adjudged against appellants and the sureties on their appeal bond.

Howell and Hickerson, JJ., concur.