IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 31, 2015

## STATE OF TENNESSEE EX REL. VICTOR S. JOHNSON, III, ET AL. v. MARK GWYN, ET AL.

### Appeal from the Chancery Court for Davidson County
No. 130630II     Carol L. McCoy, Chancellor

---

### No. M2013-02640-COA-R3-CV – Filed November 10, 2015

---

This appeal arises from a lawsuit seeking access to the Tennessee Bureau of Investigation ("the TBI") file concerning former Knox County Criminal Court Judge Richard Baumgartner ("Baumgartner"). The plaintiffs, Gary Christian, Deena Christian, Hugh Newsom, and Mary Newsom ("Plaintiffs"), sued TBI Director Mark Gwyn ("Gwyn") in the Chancery Court for Davidson County ("the Trial Court"), both in their individual capacities and in the name of the State of Tennessee, seeking declaratory and injunctive relief. Specifically, Plaintiffs sought a declaration that Tenn. Code Ann. § 10-7-504(a)(2)(A) is unconstitutional, as well as an order requiring the TBI to turn over its records concerning its investigation of Baumgartner. Gwyn filed a motion to dismiss, asserting lack of subject matter jurisdiction, lack of standing, and failure to state a claim. The Trial Court granted Gwyn's motion to dismiss. Plaintiffs appeal to this Court, raising a number of issues. In view of the Tennessee Court of Criminal Appeals' decision in *State v. Cobbins*, No. E2013-02726-CCA-WR-CO (Tenn. Crim. App. Feb. 4, 2015), *Rule 11 appl. perm. appeal denied August 13, 2015*, we hold that the doctrine of *res judicata* serves to bar Plaintiffs' claims. We affirm the judgment of the Trial Court on the basis of *res judicata*.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the appellants, Gary Christian, Deena Christian, Hugh Newsom, and Mary Newsom.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, and, Linda D. Kirklen, Assistant Attorney General, for the appellee, Mark Gwyn.

## OPINION

### Background

Plaintiffs are the parents of two young victims in a horrific murder case, the deeply tragic facts of which require no further elucidation from this Court. This appeal has its roots not in the underlying tragedy itself, but in a disgraceful scandal that came to light in the wake of the tragedy—the misconduct of the judge presiding over the murder trials, Baumgartner, and the disruptive impact his misconduct had on the course of justice in those cases. Baumgartner engaged in illegal conduct involving drugs and the abuse of power which led to his exit from the Christian/Newsom murder trial and, indeed, to a trial of his own. Plaintiffs assert that they have a constitutional right to access the TBI records concerning its investigation of Baumgartner. According to Plaintiffs, access to the TBI Baumgartner file is critical to prevent repetition of such judicial misconduct and to uphold public confidence in the judiciary.

In the aftermath of the Baumgartner revelations, Senior Judge Jon Kerry Blackwood replaced Baumgartner as presiding judge in the Christian/Newsom trials. Two of the defendants eventually were granted new trials. In May 2013, Plaintiffs intervened in George Thomas's retrial to petition the criminal court to unseal the TBI file. Plaintiffs asserted common law and constitutional rights to access the entire TBI file. Plaintiffs also asserted that Tenn. Code Ann. § 10-7-504(a)(2)(A) unconstitutionally restricted their rights. Tenn. Code Ann. § 10-7-504 (a)(2)(A) (2012) provides:

> All investigative records of the Tennessee bureau of investigation, the office of inspector general, all criminal investigative files of the department of agriculture and the department of environment and conservation, all criminal investigative files of the motor vehicle enforcement division of the department of safety relating to stolen vehicles or parts, all criminal investigative files and records of the Tennessee alcoholic beverage commission and all files of the handgun carry permit and driver license issuance divisions of the department of safety relating to bogus handgun carry permits and bogus driver licenses issued to undercover law enforcement agents shall be treated as confidential and shall not be open to inspection by members of the public. The information contained in such records shall be disclosed to the public only in compliance with a subpoena

or an order of a court of record; provided, however, that such investigative records of the Tennessee bureau of investigation shall be open to inspection by elected members of the general assembly if such inspection is directed by a duly adopted resolution of either house or of a standing or joint committee of either house. Records shall not be available to any member of the executive branch except to the governor and to those directly involved in the investigation in the specified agencies.

The TBI opposed Plaintiffs' petition. The criminal court denied Plaintiffs' petition. Plaintiffs appealed to the Tennessee Court of Criminal Appeals and were unsuccessful in *State v. Cobbins*, filed February 4, 2015. *State v. Cobbins* has significant impact on this appeal as will be discussed later in this Opinion.

Meanwhile, Plaintiffs pursued other avenues to access the TBI Baumgartner file. In May 2013, Plaintiffs requested the TBI Baumgartner file directly from the TBI. In a letter, the TBI denied Plaintiffs' request, citing confidentiality. Plaintiffs subsequently filed this instant lawsuit against TBI Director Gwyn individually in the Trial Court seeking declaratory and injunctive relief. Specifically, Plaintiffs sought a declaration that Tenn. Code Ann. § 10-7-504(a)(2)(A) is unconstitutional, as well as an order that the TBI turn over its records concerning the Baumgartner investigation. Gwyn filed a motion to dismiss for failure to state a claim upon which relief could be granted. In July 2013, Plaintiffs filed an amended complaint, in their individual capacities and in the name of Davidson County District Attorney Victor S. Johnson, III as relators seeking relief under the Declaratory Judgment Act, *quo warranto* statutes, and 42 U.S.C. § 1983 and 1988. Gwyn filed a motion to dismiss Plaintiffs' amended complaint, citing lack of subject matter jurisdiction, lack of standing, and failure to state a claim. The Trial Court conducted a hearing. In its September 2013 order, the Trial Court granted Gwyn's motion to dismiss. The Trial Court held, among other things, that Plaintiffs lacked standing under the *quo warranto* statutes, certain victims' rights provisions, and the Public Records Act. The Trial Court found further that even if Plaintiffs had standing, they enjoyed no absolute constitutional right to access government records. The Trial Court also declined to hold Tenn. Code Ann. § 10-7-504 (a)(2)(A) unconstitutional. Finally, the Trial Court ruled that it lacked jurisdiction under the doctrine of *in custodia legis* because Knox County Criminal Court already had jurisdiction over the TBI Baumgartner investigation file.[1] In November 2013, the Trial Court entered an order making a minor correction to its previously rendered judgment. Plaintiffs timely filed an appeal to this Court.

---

[1] *In custodia legis* means "in custody or keeping of the law." *Butcher v. Howard*, 715 S.W.2d 601, 604 (Tenn. Ct. App. 1986).

## Discussion

Although not stated exactly as such, Plaintiffs raise the following issues on appeal: 1) whether the Trial Court erred in holding that Plaintiffs lacked standing; 2) whether the Trial Court erred in divesting itself of jurisdiction based upon the doctrine of *in custodia legis*; 3) whether Tenn. Code Ann. § 10-7-504(a)(2)(A) violates the Fifth and Fourteenth Amendment prohibitions against vague and standardless statutes; 4) whether the Trial Court erred in dismissing Plaintiffs' claims under Rule 12.02(6) by holding that there is no state or federal constitutional right to inspect governmental records; 5) whether Plaintiffs have an absolute constitutional right under Tenn. Const. Art. 1, § 19 and Art. XI, § 16 to access Tennessee government records; and, 6) whether Plaintiffs have a federal common law or U.S. Constitutional First Amendment right to access Tennessee governmental records. Gwyn raises an additional issue on appeal: whether the doctrine of *res judicata* serves to bar Plaintiffs' claims. The issue of *res judicata* being dispositive, we address it first.

A "question of whether collateral estoppel applies is a question of law, as is the question of whether a prior judgment has *res judicata* effect." *Tareco Properties Inc. v. Morriss*, No. M2002-02950-COA-R3-CV, 2004 WL 2636705, at \*12 n. 20 (Tenn. Ct. App. Nov. 18, 2004), *no appl. perm. appeal filed. See also In re Estate of Boote*, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005) ("A trial court's decision that a subsequent lawsuit is barred by principles of res judicata presents a question of law which this court reviews de novo."). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).[2]

In the present case, the Trial Court did not hold that Plaintiffs' claims were barred by *res judicata*. Indeed, it could not have done so because the Tennessee Court of Criminal Appeals did not file its opinion in *State v. Cobbins* until February 2015, quite some time after the Trial Court's November 2013 disposition in the present case. Typically, *res judicata* is asserted as an affirmative defense. Our Supreme Court has explained:

---

[2] Plaintiffs argue that the Trial Court considered matters outside the scope of the amended complaint and that the motion to dismiss should be converted into one for summary judgment. Specifically, Plaintiffs argue that some of the Trial Court's observations as to the interest and injuries that family members of victims have in all murder cases exceeded the proper scope of examination on a motion to dismiss. We find the Trial Court's remarks on this score inconsequential and irrelevant, especially considering our holding on appeal.

-4-

Res judicata is one of the affirmative defenses that must be included in the defendant's answer. Tenn. R. Civ. P. 8.03. However, in appropriate circumstances, it may be raised in a Tenn. R. Civ. P. 12.02(6) motion. For a Tenn. R. Civ. P. 12.02(6) motion to be used as a vehicle to assert an affirmative defense, the applicability of the defense must "clearly and unequivocally appear[ ] on the face of the complaint." *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 404 (Tenn. 2002) (quoting *Anthony v. Tidwell*, 560 S.W.2d 908, 909 (Tenn. 1977)). In other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief. *See Ragsdale v. Hill*, 37 Tenn. App. 671, 681, 269 S.W.2d 911, 916 (1954) (holding that a demurrer asserting res judicata was improper when the petition being challenged did not mention the prior decree); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 713-14 (3d ed. 2004).

*Jackson v. Smith*, 387 S.W.3d 486, 491-92 (Tenn. 2012) (footnotes omitted).

However, when a plaintiff pursues two similar lawsuits in different venues, that plaintiff runs the risk of receiving an unfavorable result in the initial case and having that result bind the other case. *See Crain v. CRST Van Expedited, Inc.*, 360 S.W.3d 374 (Tenn. Ct. App. 2011) (holding that a party may pursue what would be a compulsory counterclaim in a separate lawsuit but that party runs the risk of losing in the initial lawsuit and being bound by that result). In the present case, it is clear that from the beginning, both Plaintiffs and Gwyn grappled with what effect, if any, the concurrent Knox County Criminal Court proceedings would have on the instant case. In Plaintiffs' amended complaint, they acknowledge the concurrent action taking place in Knox County Criminal Court, stating:

58. Plaintiffs attach to and include in this Amended Complaint as Attachment D a petition they filed in their individual capacity in a Knox County Criminal Court to intervene in that criminal case to obtain access to judicial records that had been considered by the Court; provided to the Defendants and their attorneys; and filed with the Clerk under seal.

59. As this Court will see, and contrary to the factual representation made by Defendant Gwyn, the Knox County Criminal Court petition did not mention Tenn. Code Ann. § 10-7-504(2)(A) and made no claim to the TBI to examine its records under Tenn Const. Art. I, § 19 or the Public Records Act.

60. Also as the Court will see, the Knox County Criminal Court petition did not make any claim that § 10-7-504(2)(A) was facially unconstitutional under the Tennessee or United States Constitutions.

61. Also as the Court will see, Plaintiffs petitioned the Knox County Criminal Court for access to its judicial records. Plaintiffs made no request of the Knox County Criminal Court for access to records in the possession of the TBI or Defendant Gwyn.

(Footnote omitted). Likewise, Gwyn's motion to dismiss discusses the criminal court matter and its possible ramifications, stating:

Here, the Knox County Criminal Court has assumed jurisdiction over the complete TBI file involving the investigation into former judge Baumgartner's conduct, much of which is filed under seal in the clerk's office. While Plaintiffs are not asking this Court to specifically order the TBI file in Knox County released to them, a declaration by this Court that T.C.A. § 10-7-504(a)(2)(A) violates Plaintiffs' constitutional rights and an order allowing them access to the TBI file as Plaintiffs are requesting would have the same effect. Not only would this allow Plaintiffs to re-litigate issues they have already presented and that are still pending in Knox County, as discussed in Defendant's previous memorandum of law, but Plaintiffs are asking this Court for relief that would be in direct contradiction to the criminal court's ruling and would likely interfere with that court's order denying Plaintiffs access. For example, if Plaintiffs are successful in obtaining a declaratory judgment that the confidentiality statute is unconstitutional, Plaintiffs could then use this Court's ruling to demand that the criminal court allow them to see the entire TBI file currently under seal in the clerk's office.

While the elements of *res judicata* could not be met during the proceedings below as no final judgment had yet come down in the concurrent proceedings in Knox County Criminal Court, the parties certainly were on notice of the possible impact of a final judgment there. We now review *State v. Cobbins*, the final outcome of the Knox County Criminal Court proceedings. The Tennessee Court of Criminal Appeals stated, in relevant part:

During the retrial of Defendant Thomas, on May 2, 2013, Petitioners, the respective parents of the victims in the underlying criminal proceedings, filed a pleading titled "Petition to Intervene for Access to Court Records," seeking access to the TBI file ("Exhibit 6") filed under seal on December 1, 2011, during the hearing on the motions for new trial.

The TBI filed a response opposing Petitioners' intervention and right to access the TBI file. After a hearing on July 2, 2013, and several additional filings by the parties, the trial court entered a memorandum and order on July 19, 2013, granting Petitioners' motion to intervene but denying their request that the TBI file be unsealed. On August 19, 2013, Petitioners filed a notice of appeal with this Court.

\*\*\*

While it is clear that Section 10-7-504(a)(2)(A) contemplates that TBI investigative files may become relevant to and involved in legal proceedings through "a court order or subpoena," we do not believe that the General Assembly intended for such information to automatically lose its confidentiality as to the public once it becomes a judicial record as defined by other provisions of the PRA. Indeed, another provision of the PRA strongly suggests precisely that. Tennessee Code Annotated section 10-7-503(c)(2) provides that "[i]nformation made confidential by this chapter shall be redacted whenever possible . . . ." This provision makes clear that confidential information that is interspersed with otherwise public information that is subject to disclosure should retain its confidential character despite its presence in open public or judicial records. *See Schneider*, 226 S.W.3d at 346 (instructing the trial court that a public record "should not be deemed exempt simply because it contains some exempt information. Rather, redaction of the exempt information is appropriate."). We, therefore, determine that the PRA did not grant a statutory right of public access to the stipulated portion of the TBI file, despite being a judicial record. While judicial records that are not covered by an applicable statutory exemption may be sealed in the trial court's discretion after considering the competing interests, *see Huskey*, 982 S.W.2d at 362, that balancing test is not available to the trial court where other state law, such as Section 10-7-504(a)(2)(A) in this case, directly removes such information from the public domain.

\*\*\*

In this case, the trial court redacted and sealed portions of the TBI file that it determined "ha[d] no business being in the public domain and [were] not relevant at all to any of the issues that are pertinent to this case." This was a proper admissibility determination in which the trial court excluded irrelevant material. The trial court clearly explained that it was releasing to the public in Exhibit 5 all information in the TBI file on which

-7-

it was relying in adjudicating the defendants' motions for new trial. Indeed, the extent of the detailed information that was publicly revealed by the trial court at the hearing demonstrates that the trial court was not hesitant to unveil the lurid details of any relevant information from the TBI file. This was not a situation where the trial court considered relevant and admissible portions of the TBI file in making an adjudicatory decision and then chose to redact specific parts of the information on which it relied because it believed that the nature of that information needed to remain confidential. In its memorandum and order, the trial court specifically found that "[t]here has been no showing that the court relied upon, nor that the parties referred to, any portion of the TBI record not made a public record." Because the portions of the TBI file that Petitioners seek to unseal were inadmissible as irrelevant and not used by the trial court in the adjudication process, we conclude that they do not have a First Amendment right to that information.

***

Having determined that there is no First Amendment right to access the redacted and sealed portions of the TBI file, we also conclude that there is no greater right of access under the Constitution of Tennessee. Petitioners make bald assertions that any of a litany of state constitutional provisions guarantee them a right of access to the sealed file, including Article I, section 17; Article I, section 19; Article II, section 1; and Article XI, section 16. Those arguments are unavailing. We acknowledge that this Court has previously suggested that Article I, section 19 provides a right of access to judicial records independent of the First Amendment. *See Huskey*, 982 S.W.2d at 362 n. 3. However, Petitioners provide no persuasive basis for us to conclude that the Constitution of Tennessee differs from its federal counterpart on this issue. Although Petitioners have adamantly maintained that the "open courts" provision of Article I, section 17 bears upon their access to judicial records claim, we did not find any Tennessee case law, and Petitioners have pointed us to none, suggesting that this provision is applicable. Similarly, we did not find any Tennessee case law suggesting that any of the other constitutional provisions cited by Petitioners without supporting authority are relevant to their claim.

Petitioners also argue that they are entitled special access to the redacted portions of the TBI file because they are classified as victims of crime under Tennessee law. However, despite being victims as defined by Tennessee Code Annotated section 40-38-302(4)(A)(iii)(a), Petitioners have not shown that their constitutional or statutory rights in this capacity

entitle them to unique access to the redacted TBI file or that the trial court's decision to seal and leave sealed the same violates any of their enumerated rights. *See generally* Tenn. Const. art. I, § 35; Victims' Bill of Rights, T.C.A. §§ 40-38-101 to 118; T.C.A. § 40-38-301 to 303. We have found no authority for the proposition that Petitioners' right to access judicial documents is broader than that of the media and the public at large.

*State v. Cobbins*, No. E2013-02726-CCA-WR-CO (Tenn. Crim. App. Feb. 4, 2015) (footnotes omitted).[3]

Having reviewed *State v. Cobbins*, we now determine whether that opinion has preclusive effect on the present appeal. This Court recently undertook a thorough analysis of the doctrine of *res judicata* as follows:

Res judicata is "[a]n issue that has been definitively settled by judicial decision." Black's Law Dictionary 1425 (9th ed. 2009); *see also Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 392 (Tenn. Ct. App. 2009). The doctrine of res judicata is a "rule of rest" meant to promote finality, prevent inconsistent or contradictory judgments, conserve resources, and prevent vexatious lawsuits. *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012); *see also Edwards v. City of Memphis*, No. W2007-02449-COA-R3-CV, 2009 WL 2226222, at *3 (Tenn. Ct. App. July 27, 2009). The term "res judicata" often refers generally to the effect that a judgment may have on subsequent proceedings. Black's Law Dictionary, *supra* ; *see also Regions*, 310 S.W.3d at 392.

One such effect is claim preclusion. The doctrine of claim preclusion "bars a second suit between the same parties on the same cause of action with respect to all issues which were or could have been raised in the former suit." *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000); *see also Jackson*, 387 S.W.3d at 491. A party asserting claim preclusion must demonstrate: "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Jackson*, 387 S.W.3d at 491; *see also Goza II*, 397 S.W.3d at 570; *Edwards*, 2009 WL 2226222, at *2.

---

[3] The Tennessee Court of Criminal Appeals did not rule on the facial constitutionality of Tenn. Code Ann. § 10-7-504(a)(2)(A), but did observe that the statute withstood a facial challenge in *Abernathy v. Whitley*, 838 S.W.2d 211 (Tenn. Ct. App. 1992).

Another possible effect of a judgment is issue preclusion, also known as collateral estoppel. *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009). Collateral estoppel prevents the redetermination of an issue of law or fact that has already been determined by a court of competent jurisdiction. *Cihlar*, 39 S.W.3d at 178. To invoke collateral estoppel, a party must demonstrate: (1) that the issue was determined in a prior action by the parties or their privies; (2) that the issue was necessary to the prior judgment; and (3) that a final judgment was rendered in the prior action. *Goza II*, 397 S.W.3d at 570-71.

Appellants assert the chancery court erred in dismissing their claims under the doctrine of res judicata. First, they argue that our prior pronouncements concerning the validity of the trust documents and the distribution of the estate assets are dicta and, therefore, not entitled to preclusive effect. Second, they argue that they are not in privity with the other parties who have sought to raise similar claims. We find neither argument availing.

The plaintiffs in *Goza I* raised both the validity of the trust and the distribution of the assets as issues, and we found them to be part of the basis for a justiciable controversy in that case. *Goza I*, 2011 WL 334507, at *8. Even so, res judicata bars not only issues that were actually decided but also those which "*could have been raised*" in the former suit. *Cihlar*, 39 S.W.3d at 178 (emphasis added). Thus, even if these issues had not been directly addressed, determination of the issues in this proceeding is properly precluded under the doctrine of res judicata because the issues could have been raised in *Goza I*.

Appellants' second argument is that they are not in privity with the parties who have already raised claims regarding the trust in our previous decisions. The concept of privity in the context of res judicata is not identical to the concept as it is used in discussing contractual relationships. *Edwards*, 2009 WL 2226222, at *3. For res judicata purposes, the concept of privity involves an examination of the parties' relationship to the subject matter of the litigation, not the relationships between the parties themselves. *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 185 (Tenn. Ct. App. 2001); *Cihlar*, 39 S.W.3d at 180; *Phillips v. Gen. Motors Co.*, 669 S.W.2d 665, 669 (Tenn. Ct. App. 1984); *Edwards*, 2009 WL 2226222, at *3. Whether privity exists depends on an examination of the facts of each particular case. *Edwards*, 2009 WL 2226222, at *3. "Privity connotes an identity of interest, that is, a mutual or successive

interest to the same rights." *Cihlar*, 39 S.W.3d at 180 (citations omitted). "In other words, privity is not established by parties being legally connected, either by contract, blood, or some other means, but rather whether they can claim the same legal rights asserted to the subject matter." *Suntrust Bank v. Stoner*, No. 3:07-CV-397, 2009 WL 998403, at *2 (E.D. Tenn. Apr. 14, 2009).

To briefly review, the plaintiffs in *Goza I* claimed an interest in the trust assets as the intestate heirs of Ms. Goza. *Goza I*, 2011 WL 334507, at *2. The plaintiff in *Goza II* was Mr. Morrow in his capacity as administrator of Mr. Goza's Estate. *Goza II*, 397 S.W.3d at 565. In *Goza III*, the plaintiff was Mr. Goza's Estate. *Goza III*, 2013 WL 4766544, at *1. Despite their differing positions, we concluded that all of these parties were in privity for res judicata purposes. *See Goza II*, 397 S.W.3d at 571; *Goza III*, 2013 WL 4766544, at *6. They all had a mutual interest in relation to the trust and the disposition of its assets.

Appellants here share a mutuality of interest with relation to the subject matter—the trust and its assets—with the plaintiffs that have come before them. As intestate heirs of Mr. Goza, they inherit, if at all, through Mr. Goza's estate. *See Aclin v. Speight*, 611 S.W.2d 54, 55 (Tenn. Ct. App. 1980) (concluding that unborn heirs are in privity with prior contestants in a will contest because they had a successive interest in inheriting through a prior contestant). The chancery court properly dismissed Appellants' complaints as barred by the doctrine of res judicata.

*Goza v. SunTrust Bank*, No. W2014-00635-COA-R3-CV, 2015 WL 4481267, at **5-6 (Tenn. Ct. App. July 22, 2015), *perm app. pending*.[4]

The Knox County Criminal Court proceedings were adjudicated at the trial court level, upheld on appeal in a detailed opinion by the Tennessee Court of Criminal Appeals, and permission to appeal was denied by the Tennessee Supreme Court. We conclude, readily, that the underlying judgment at issue was rendered by a court of competent jurisdiction, and that the underlying judgment was final and on the merits. What remains to be considered are the other two elements of *res judicata*: whether the same parties or their privies were involved in both suits, and whether the same claim or cause of action was asserted in both suits.

---

[4] While a Rule 11 application for permission to appeal apparently has been filed in *Goza*, we are confident in the general discussion of *res judicata* contained in the opinion, relying as it does on well-established legal precedents.

-11-

The Plaintiffs are the same parties as in *State v. Cobbins*. Plaintiffs sued Gwyn in his individual capacity in the present case. However, as noted in the *Goza* opinion above, privity in the context of *res judicata* relates to succession of interests, and depends upon the circumstances of each case. The appellee in *State v. Cobbins* is the TBI. In the present case, Gwyn, while sued in his individual capacity, clearly is involved in this matter in his capacity as TBI Director. This is sufficient commonality of interest, in our view, to establish privity. We hold that the parties in the present case are in privity for purposes of *res judicata*.

We next consider whether the same claim or cause of action was asserted in both suits. Plaintiffs assert that their challenge in *State v. Cobbins* was not, as here, a facial constitutional challenge to Tenn. Code Ann. § 10-7-504(a)(2)(A). Also, the petition filed by Plaintiffs in Knox County Criminal Court were for judicial records pertaining to the TBI Baumgartner file, not records in the possession of the TBI or Gwyn. In short, while both cases have the similar goal of accessing the TBI's Baumgartner investigation records, the precise claims of Plaintiffs in each case slightly differ, though overlap in their objective. Gwyn argues, nevertheless, that the same essential claims and issues before this Court are those from the criminal court proceedings. We agree with Gwyn.

As discussed in *Goza* above, *res judicata* applies not only to those issues that were raised previously, but those that *could have been raised*. Even if Plaintiffs purport to offer alternative grounds for relief in the present appeal, we see no reason why Plaintiffs' full range of issues arising from their claims challenging the constitutionality of Tenn. Code Ann. § 10-7-504(a)(2)(A) and their right to access the TBI Baumgartner file could not have been aired in the Knox County Criminal Court case. Indeed, in our judgment, the detailed and thorough opinion of the Tennessee Court of Criminal Appeals in *State v. Cobbins*, quoted above, represents the complete and final word on the litigation to access the TBI Baumgartner file as between these parties.

We hold that all of the necessary elements of *res judicata* have been established to bar Plaintiffs' claims in this matter. Plaintiffs' issues on appeal are pretermitted by our holding. We affirm the judgment of the Trial Court on the basis of *res judicata*.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Gary Christian, Deena Christian, Hugh Newsom, and Mary Newsom, and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE